

## NUMBER 13-09-00550-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**TAREYTON LEE,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 156th District Court
### of Bee County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

Appellant Tareyton Lee was serving a six-year prison sentence in the Texas Department of Criminal Justice (TDCJ) Garza West Unit in Bee County, Texas, when he was charged with assaulting a correctional officer. A jury convicted Lee for assault on a public servant, a third-degree felony, and sentenced him to twenty-five years to run consecutively with his previous sentence. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 22.01(b)(1) (Vernon Supp. 2009). By two issues, Lee challenges the factual sufficiency of the evidence used to establish that: (1) the correctional officer he assaulted was lawfully

discharging an official duty; and (2) Lee's conduct was unjustified. We affirm.

## I. BACKGROUND

### A. The State's Evidence

Officer Rodney Boerm was a fifteen-year Corrections Officer for the TDCJ. On June 13, 2008, Officer Boerm was conducting a routine strip search in the Garza West prison unit dining area, also known as the "chow hall." Officers performed regular strip searches on inmates working in the kitchen to ensure that the inmates did not remove food, utensils, or other possible contraband from the kitchen. Prison authorities knew that a search was particularly warranted on this day because a weapon had recently been found in the unit's kitchen.

During his testimony, Officer Boerm described the standard protocol for conducting strip searches. Initially, inmates stand against a wall in front of the officers and remove all of their clothing, including their socks, shoes, and underwear. The inmates are then asked, one-by-one, to hand their clothing to the officers so that the officers can carefully inspect the clothing for contraband. Officers then order the inmate to step forward and slowly turn around so that officers can verify that there are no items concealed between the inmates' toes, fingers, or buttocks, or in their mouths. Finally, the officers return the clothing to the inmates so that they can dress again.

Officer Boerm testified that he planned to inspect five to six inmates who were standing before him against a wall in the chow hall. After each inmate was searched, that inmate would join a group of inmates that had already been searched. Officer Boerm testified that Lee, who had not been searched yet, kept attempting to get past him to join the group of previously-searched inmates. Officer Boerm stated that, "[h]e kept trying to walk around my left side and even walk in between and walk to the right side of me, and I kept telling him get back behind the line and stay there and I would be with him in just a

2

moment."

Officer Boerm testified that when he finally began the search process with Lee, that Lee threw his clothing at him. Officer Boerm knocked the clothing to the ground before it hit him and then ordered Lee to pick it up because, for security reasons, officers do not bend over in the presence of inmates. According to Officer Boerm, Lee picked up his clothing and again attempted to join the group of inmates that had been previously searched. As Lee made his way towards that group, he bumped the officer's right shoulder causing Officer Boerm to take a step back. Lee and Officer Boerm then began arguing loudly as Officer Boerm placed his hand on Lee's left shoulder to stop him and direct him back towards the wall.

Officer Boerm testified that Lee then suddenly "turned completely around and took a swing at [him] with his right hand." Although Officer Boerm blocked Lee's intended blow with his left hand, the swing still landed on Boerm's forehead above his left eye and knocked off his glasses and hat. Officer Robert Olivarez came to support Officer Boerm and grabbed Lee from the back in a bear hug. According to Officer Boerm, Lee managed to hit Boerm two more times—with one punch landing in Boerm's rib cage—even after Officer Olivarez grabbed him. Another officer, Sergeant Enrique Jimenez, then rushed to the scene and sprayed C.O.P.,[1] a pepper spray, on Lee. Sergeant Jimenez accidentally sprayed Officer Olivarez in the process as well. Lee was eventually placed on the ground and handcuffed.

Officer Olivarez, a nine-and-a-half-year TDCJ employee, testified next. He stated that he had just finished searching his second inmate in another part of the chow hall when he heard "loud, vulgar language" and turned to see who was speaking. When he turned, he saw Officer Boerm in a "defensive stance" and witnessed "Offender Lee push Officer

---

[1] C.O.P., according to Sergeant Jimenez's testimony, stands for "carry on person."

3

Boerm." He rushed over to the area and saw Lee "hit [Boerm] in the face." Officer Olivarez grabbed Lee, but Lee managed to swing two more times at Officer Boerm. Because Officer Olivarez was behind Lee, though, he did not know whether Lee actually made contact with the swings. Officer Olivarez testified that Sergeant Jimenez, who had rushed to the scene to provide assistance, sprayed pepper spray on Lee to help subdue him (accidentally spraying Olivarez), and Lee was placed on the ground.

Sergeant Jimenez, a fourteen-year TDCJ employee, testified that he was first alerted to the situation when he heard Officer Boerm yelling "to get back." He witnessed "the offender swinging at Officer Boerm," but was not sure if the punch made impact. Sergeant Jimenez immediately rushed to where Officer Boerm and Lee were and sprayed his C.O.P. on Lee, accidentally spraying Officer Olivarez as well.

With respect to his injuries, Officer Boerm testified that he was hit above his left eye. Furthermore, although he initially believed that his right finger had been broken, only a blood vessel had broken, and his finger was bruised and painful for three days. Officer Boerm also had bruises in the shape of knuckle prints on his rib cage, which he described as painful.

## B.    The Defense's Evidence

The defense presented three witnesses, all of whom were Lee's fellow inmates at the Garza West Unit. The first witness, inmate Robert Olvera, explained that he was a cook in the unit kitchen on the day of the incident in question. He testified that he heard Officer Boerm and Lee arguing and cussing loudly as he was waiting to be strip searched. Specifically, he heard Lee tell Officer Boerm to "give him three feet"[2] or to "give [him] some space." Next, inmate Olvera testified that Officer Boerm pushed Lee towards the wall and

---

[2] Evidence revealed that the Texas Department of Criminal Justice's standard protocol for inmate strip searches required officers to give at least three of space feet to inmates when the inmates are undressing.

"grabbed [Lee] in a headlock." Olvera then saw another officer (presumably Officer Olivarez) come and "tackle" the men down.

The defense's next witness was inmate Joseph Sizemore, who testified that he saw the altercation between an officer[3] and Lee while he was waiting in line to be strip searched. He heard Lee say "give me my three feet" and the officer respond, "'F' your three feet." Sizemore recalled that he saw the officer push the inmate, and suddenly other officers "grabbed the inmate and brought him to the ground and sprayed pepper spray." He stated that the officers placed Lee into a headlock "in the procedure bringing him down," but then testified that he "didn't see nobody [sic] put anybody in a headlock." Sizemore did not see Lee throw any punches during this altercation.

The defense's last witness was Isaiah Soto. Soto testified that he was approximately nine to ten feet away from Officer Boerm and Lee in the chow hall when the two men began arguing and cussing loudly. Soto reported that Lee was asking for "his three feet distance" so he could strip his clothing and was surprised that Officer Boerm "wasn't giving [Lee] the space that we are allowed to have in TDC." He saw Officer Boerm push Lee with his hand back to the wall and Lee pushed back. Olvera testified that Officer Boerm grabbed Lee by the head and Lee swung at him about three times. Olvera said that Officer Olivarez came and hit Lee from behind, and Lee "went down." Sergeant Jimenez then sprayed Lee and accidentally sprayed Olivarez in the process.

The jury convicted Lee for assault on a public servant, and this appeal followed.

## II. STANDARD OF REVIEW

A factual sufficiency review requires the court to review evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable

---

[3] Inmate Sizemore did not know the name of the officer, but testified that he thought it was "Bynam or something like that." He did, however, confirm that Lee was the inmate involved in the altercation.

doubt. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence can be factually insufficient if it is so weak such that the result is clearly wrong and manifestly unjust, or if the jury's verdict is against the great weight and preponderance of the evidence. *Id*. We defer to the jury's decision regarding contradictory testimony, because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in the better position to judge. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Furthermore, when one raises a factual sufficiency inquiry regarding a jury's rejection of a self defense argument, as it did in Lee's case,

> We review the entirety of the evidence and determine whether the evidence supporting the verdict is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt and implied finding against the defense, although adequate if taken alone, is greatly outweighed by contrary proof.

*Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *see Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Factual sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Malik,* 953 S.W.2d at 240.

Under a hypothetically correct jury charge, a person commits the offense of assault against a public servant when: (1) a person; (2) intentionally, knowingly, or recklessly caused bodily injury; and (3) the offense is committed against a person the actor knows

6

is a public servant while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon 2003). The State was required to prove each of these elements beyond a reasonable doubt. *Id*. § 2.01 (Vernon 2003).

A hypothetically correct charge in this case would also include an instruction on self-defense or justification. A person is justified in using force against another when he or she reasonably believes that force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. *Id*. § 9.31 (Vernon 2003). A defendant has the burden of producing some evidence to support a self-defense claim. *Zuliani*, 97 S.W.3d at 594. Once the defendant produces this evidence, the State has the burden of persuasion to show the defendant did not act in self-defense. *Id*. To meet this burden, the State is not required to produce evidence to disprove self-defense but only to prove its case beyond a reasonable doubt. *Id*. "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory." *Id*.

## III. DISCUSSION

### A. Lawful Discharge of Official Duties

By his first issue, Lee argues that Officer Boerm should not be considered a public servant for the purposes of his assault conviction because Officer Boerm was not lawfully performing his duties. Texas law provides that:

> [T]he lawful discharge of official duties . . . means that the public servant is not criminally or tortiously abusing his office as a public servant by acts of, for example, official oppression or violations of the civil rights of a person in custody or the use of unlawful, unjustified force.

*Hall v. State*, 158 S.W.3d 470, 474-75 (Tex. Crim. App. 2005). Lee asserts that Officer Boerm was "criminally or tortiously abusing" his position of power by "ordering [Lee] to strip naked, refus[ing] [Lee's] request that [Lee] be provided 3 feet of space, hurl[ing] obscenities at [Lee], and ma[king] some level of forcible physical conduct with Lee."

We disagree. Officer Boerm was a veteran correctional officer for the TDCJ. At the time of the incident in question, he was in uniform and conducting a routine strip search of all inmates performing kitchen duty. According to Boerm, the strip search was a regular tool used by TDCJ authorities to maintain the security of the officers working in the prison units as well as the prisoners themselves; the searches ensured that the inmate population did not have weapons. The evidence revealed that a search was particularly warranted on that day because officers had recently found a weapon in the kitchen area.

The loud arguing and cussing between Officer Boerm and Lee, as testified to by several witnesses, cannot be described as an abuse of power, especially in light of Officer Boerm's testimony that Lee was apparently trying to avoid being strip searched. In addition, the placement of Officer Boerm's hand on Lee's shoulder to push Lee back to the wall appeared to be a measured response to try to stop Lee's evasion. By all accounts, Officer Boerm was "on-duty, in uniform, and supervising inmates, i.e., acting within his official capacity." *See Hall*, 158 S.W.3d at 472-73.

Furthermore, the mere fact that an officer uses force does not necessarily mean that the officer is abusing his position of power. TEX. PENAL CODE ANN. § 9.53 (Vernon 2003). The Texas Penal Code provides guidelines for when a correctional officer's use of force is lawful and justified:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

*Id.* In this case, Officer Boerm's yelling and his attempt to force Lee back to the wall by turning his shoulder seemed reasonable in light of the circumstances. If Lee had managed to evade the search and did in fact have a weapon, this could compromise the "security

8

of the correctional facility . . . other persons . . . or [Lee's] own safety." *Id.*

Moreover, we note that even if Officer Boerm did not give Lee the recommended three feet of space during the strip search, a point which is contested among the witnesses, this act would not necessarily constitute an abuse of power. "Even if [Officer Boerm] had violated a TDCJ policy, it would not mean that he was not performing an official duty as a public servant for the purposes of this statute." *Hall*, 158 S.W.3d at 472-73. Viewing the evidence in a neutral light, we can conclude that the evidence is factually sufficient to show that Officer Boerm was lawfully discharging an official duty when he was strip searching Lee. Lee's conviction for assault on a public servant is not "clearly wrong" nor "manifestly unjust." *See Watson*, 204 S.W.3d at 414-15. We overrule Lee's first issue.

## B.     Justification Defense

By his second issue, Lee argues that he was justified in defending himself against Officer's Boerm's alleged use of force. He cites that:

> [A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. . . .

TEX. PENAL CODE ANN. § 9.31(a). The jury, however, rejected Lee's self-defense argument, a decision with which we agree. Although the evidence was disputed with respect to whether Officer Boerm used force first, we defer to the jury's conclusions regarding contradictory testimony. *Lancon*, 253 S.W.3d at 706. Eyewitness testimony revealed that Officer Boerm yelled at Lee and placed his hand on Lee's shoulder to direct him back to the wall when Lee attempted to evade a strip search. Lee's three swings at Officer Boerm, which caused head, finger, and ribcage injuries to Boerm, did not seem "reasonable" in response. Furthermore, there was no evidence regarding Lee's alleged injuries, making

it less likely that Lee needed to use force to protect himself. Finally, although the defense witnesses provided testimony regarding an alleged headlock, it appears that the jury did not find this evidence credible. "The fact finder may choose to believe all, some, or none of a witness's testimony." *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We find that the State met its burden of persuasion to show that Lee did not act in self-defense and proved its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594.

Moreover, Texas law provides that "[t]he use of force against another is not justified in response to. . . [a] search that the actor knows is being made by a peace officer." TEX. PENAL CODE ANN. § 9.31(b)(2). Lee was an inmate assigned to kitchen duty at the Garza West Unit and knew or should have known that strip searches were regularly conducted. He also knew that Officer Boerm was a correctional officer for the unit. We agree with the jury's decision that Lee's conduct was not justified.

Again, viewing the evidence in a neutral light, we conclude that the evidence is factually sufficient to show that Lee's behavior was not justified. The evidence is not so weak "as to undermine our confidence in the jury's determination, or the proof of guilt and implied finding against the defense. . . ." *Zuliani*, 97 S.W.3d at 595. Lee's second issue is overruled*.*

## IV. CONCLUSION

We affirm the decision of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
13th day of May, 2010.

10